IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **ANGEL LUIS PAGÁN SÁNCHEZ**<br>Urb. Matorell #B-11<br>St. Louis Munoz Rivera<br>Dorado, P.R. 00646<br><br>Plaintiff,<br><br>v.<br><br>**CHESAPEAKE CREWING LLC**<br>130 Severn Avenue, Suite 200<br>Annapolis, MD 21403<br><br>Serve on:<br>Russell Paret<br>130 Severn Avenue, Suite 200<br>Annapolis, MD 21403<br><br>and<br><br>**SCHUYLER LINE NAVIGATION COMPANY, LLC.**<br>130 Severn Avenue, Suite 200<br>Annapolis, MD 21403<br><br>Serve on:<br>Russell Paret<br>100 Severn Avenue<br>Annapolis, MD 21403<br>Registered Agent,<br><br>Defendants. | CIVIL NO.<br><br>JURY TRIAL DEMANDED<br><br>SEAMAN'S CASE;<br><br>JONES ACT (NO FEES REQUIRED) |

**COMPLAINT**

**TO THE HONORABLE COURT:**

NOW COMES the Plaintiff, Ángel Luis Pagán Sánchez ("Mr. Pagán") (hereinafter, "Plaintiff"), through the undersigned attorney, and respectfully alleges and prays as follows:

1

# I. INTRODUCTION

1. This is a federal question action filed by plaintiff to redress injuries suffered by Mr. Lopez due to the intentional and/or negligent acts committed by defendants, related to an incident that occurred in August of 2021, and the chain of events that are a direct cause of defendants' acts.

# II. JURISDICTION AND VENUE

2. Mr. Pagán is a seaman and an American citizen. As an American seaman, he brings this action pursuant to the terms of Section 1916, Title 28, United States Code, without the prepayment of costs or the necessity of depositing security therefor.

3. The jurisdiction in this case is founded on the Jones Act, 46 U.S.C. §30104 (formerly 46 U.S.C. § 688), 29 U.S.C. § 1333, and the Admiralty and General Maritime Law of the United States of America. Venue of this action in this district is proper since Plaintiff suffered his injuries while on board a Maryland, U.S.A. owned vessel in Guam.

# III. REQUEST FOR JURY TRIAL

4. Plaintiff request trial by jury.

# IV. PARTIES

5. Mr. Sanchez is over the age of eighteen and a resident of Puerto Rico, United States, residing at the address set forth in the case heading.

6. Defendant Chesapeake Crewing, LLC. (hereinafter, "Chesapeake") is a Maryland limited liability company with offices in Annapolis, Maryland, and is the owner of the vessel M.T. SLNC Goodwill.

7. Defendant Schuyler Line Navigation Company, LLC. (hereinafter "Schuyler") is a Maryland limited liability company with offices in Annapolis, Maryland, and operates the vessel M.T. SLNC Goodwill.

V. STATEMENT OF CLAIM

8. Plaintiff is a member of the Seafarers International Union (hereinafter, "SIU").

9. At the time of the incident alleged in this complaint, Plaintiff was employed by Chesapeake as an ordinary seaman.

10. Plaintiff's duties while onboard the M.T. SLNC Goodwill required the use of strength to handle heavy equipment.

11. The M.T. SLNC Goodwill is a Tank vessel.

12. At all relevant times, Chesapeake and/or Schuyler managed the vessel known as M.T. SLNC Goodwill.

13. At all relevant times, Chesapeake and/or Schuyler operated the vessel known as M.T. SLNC Goodwill.

14. At all relevant times, Chesapeake and/or Schuyler owned the vessel known as M.T. SLNC Goodwill.

15. A voyage of the vessel known as M.T. SLNC Goodwill commenced on September August 7, 2021, departing from Guam, U.S.A. (herein "The Voyage").

16. On or about the 10th of August, 2021, while working on the M.T. SLNC Goodwill, Mr. Sanchez was loading and discharging garbage and dangerous liquid cargo from heavy waste tanks.

17. The waste that Mr. Pagán handled was putrid, as it was more than three (3) weeks old.

18. While Mr. Pagán handled the waste cargo, the dangerous liquid waste product of the decomposition of the garbage and waste penetrated Mr. Pagán's uniform, and made contact with his skin.

19. Mr. Pagán has a small, deep blackhead (open comedone) in the superior part of his abdomen, which had never been infected before the time of the occurrences alleged in the instant complaint. However, it became contaminated while Plaintiff handled the dangerous liquid waste in the garbage.

20. The large and heavy waste tanks that Plaintiff was handling continuously rubbed on Mr. Pagán's blackhead.

21. As a result of the blackhead (open comedone) being contaminated by dangerous liquid waste, the blackhead became infected, and Mr. Pagán started to notice the blackhead area became red and swollen.

22. A couple of hours later, Mr. Pagán noticed that the condition had worsened. The blackhead had turned into an abscess, which was very swollen, red and warm to the touch, and the surrounding skin, including his abdomen, chest and ribcage area developed a red rash, all signs that a serious infection was spreading.

23. Mr. Pagán was worried about his health, which had gotten worse, and therefore immediately reported his health condition to Second Mate, and asked for medication.

24. The Second Mate took photographs of Mr. Pagan's infected area, and told Mr. Pagán that she could not prescribe antibiotics, but could offer Tylenol, which Mr. Pagán rejected.

25. The Second Mate called the captain of the vessel, Captain Kelakios, and after seeing Mr. Pagán's condition the captain told Plaintiff that he previously had a similar condition,

4

and would arrange for Plaintiff to visit the hospital once they arrived at Yokosuko, Japan, to have surgery.

26. On August 18, 2021, once in Yokosuko, Japan, Mr. Pagán arrived at the Yokosuko Naval Hospital at approximately 3 p.m.

27. Dr. Lloyd performed surgery to extirpate the abscess, and put a surgical mesh on the wound with an orifice in order for the wound to drain. Mr. Pagán had 3 to 4 stitches on the wound.

28. Dr. Lloyd prescribed the antibiotic Clindamycin 150 mg, to be taken three (3) capsules every eight (8) hours for ten (10) days.

29. Mr. Pagán returned to the M.T. SLNC Goodwill at about 8 p.m., and at 11:45 p.m. he was ordered to report for duty, even though rest was ordered by Dr. Lloyd.

30. Mr. Pagán resumed his duties at that time, lining up the cargo system for loading and discharge, connecting cargo hoses or loading arms and securing cargo systems, among other duties. He had to go up and down stairs and handle heavy equipment, which made the surgery site stitches open, and caused the wound to bleed.

31. The surgery site wound bled on and off for three (3) days after the surgery.

32. Dr. Lloyd recommended that Mr. Pagán rest after surgery, but Mr. Pagán had to report for duty, discharging waste in Guam.

33. Mr. Pagán informed the Second Mate that the surgery site wound was bleeding, but the Second Mate instructed Mr. Pagán to keep working.

34. Since Mr. Pagán had to keep working, opening and closing valves and handling heavy equipment, he had to modify the way that he would use his strength in order to try not to hurt the surgery site.

35. On or about at 3 a.m., Mr. Pagán had to open and close valves to discard waste from 12 tanks, which required the use of substantial strength by Mr. Pagán.

36. Two or three days after the surgery, on or about August 21, 2021, Mr. Pagán started to experience pain in his lower abdomen.

37. Approximately a week after, Mr. Pagán noticed a bump in his groin area.

38. After Mr. Pagán was discharged from duty on January 15, 2022, he made an appointment with Dr. Torruellas in Dorado, Puerto Rico, to check the bump on his lower abdomen that had developed while on board the M.T. SLNC Goodwill.

39. In February 2022, Mr. Pagán had his appointment with Dr. Torruellas, who diagnosed Mr. Pagán with an inguinal hernia, and recommended hernia mesh surgery.

40. Mr. Pagán had surgery on March 17, 2022, and rested for a month and a half.

41. Dr. Torruellas informed Pagán that the inguinal hernia he developed was directly related to the excessive use of force Mr. Pagán had to use, while protecting the abscess surgery site from any wound related to work.

42. Chesapeake and/or Schuyler failed to provide proper instructions and assistance to Mr. Pagán, exposing him to foreseeable damages, thus being negligent.

43. Chesapeake and/or Schuyler failed to provide Pagán with proper medical assistance and care after he was injured, thus being negligent and acting against its obligation to provide proper cure and a safe environmental work.

44. Mr. Pagan's injury was caused by Chesapeake and/or Schuyler's negligence in (a) lack of supervision; (b) lack of proper medical assistance; (c) lack of proper instructions; (d) lack of proper safety measures; (e) failing to provide adequate and immediate medical attention; (f) their employees' negligent instructions and orders; (g) failing to mitigate damages; (h) lack of

proper cure after the injury; and (i) by instructing Mr. Pagán to continue working despite his injury; other acts so deemed negligent.

45.     As a result of said incident, Mr. Pagán developed an inguinal hernia, sustained injury to his person and has sustained: physical pain, mental anguish, psychological damages, loss of earning capacity, medical, hospital and pharmaceutical expenses, loss of life's pleasures, loss of physical capacity, sexual dysfunction, pain during sex, loss of ability to perform household services, among others.

## DAMAGES

46.     As a result of the actions described herein, Mr. Pagán was unable to be employed.

47.     As a result thereof, Mr. Pagán was disabled due to the inguinal hernia that he developed, pain, severe depression, an adverse effect on sexual activity, a sense of despair and helplessness, his tranquility has been seriously affected, suffered economic losses, all of which affected his daily activities, including his family life. Those are only a few of the damages suffered by the Mr. Pagán.

48.     Mr. Pagán has had to seek out medical treatment.

49.     As a result of the events described herein, Mr. Pagán has suffered and continues to suffer irreparable physical and emotional damages.

50.     Mr. Pagan's damages herein alleged apply to all causes of actions.

## FIRST CAUSE OF ACTION – NEGLIGENCE

51.     The allegations contained all in previous paragraphs are re-alleged as if fully alleged herein.

52.     Mr. Pagán's injury was caused by Chesapeake and/or Schuyler's negligence in (a) lack of supervision; (b) lack of proper assistance; (c) failure to provide adequate medical attention;

(d) lack of proper instructions; (e) lack of proper safety measures; (f) their employees' negligent instructions and orders and/or lack thereof; (h) failing to mitigate damages; (i) lack of proper cure after the injury; and (j) by instructing Mr. Pagán to continue working despite his injury; other acts so deemed negligent.

53. Defendants should have instructed Mr. Pagán to rest after his surgery, but were negligent in instructing him to report to duty several hours after the surgery.

54. Defendants should have provided immediate and adequate medical attention in order to provide proper care and mitigate any further damages to the Mr. Pagán.

55. Defendants should have instructed the Mr. Pagán not to continue working in order to avoid further damages, and in not doing so, Chesapeake and/or Schuyler acted negligently.

56. Chesapeake and/or Schuyler's actions and omissions, through fault and/or negligence, caused damages to Mr. Pagán, in violation of the Jones Act and General Maritime Law, entitling Mr. Pagán to damages caused as a result of those acts and omissions.

57. Chesapeake and/or Schuyler's negligence and/or intentional acts were a proximate legal cause of Mr. Pagán's injury.

## SECOND CAUSE OF ACTION – UNSEAWORTHY

58. The allegations contained all in previous paragraphs are realleged as if fully alleged herein.

59. Chesapeake and/or Schuyler failed to provide an adequate place to work. In fact, it was absolutely unsanitary, unsafe and dangerous to handle waste disposal valves while Mr. Sanchez had his condition, which worsened to the point of having to undergo surgery.

60. Chesapeake and/or Schuyler hired incompetent and inadequate crew, having the direct consequence of rendering the vessel unseaworthy.

61. The vessel was also unseaworthy because of Chesapeake and/or Schuyler's (a) lack of supervision; (b) lack of proper instructions; (c) failure to provide proper care and medical attention; (d) by failing to provide an adequate and secure workplace; (e) by ordering plaintiff to continue to work despite Mr. Pagán's surgery, pain and evident bleeding; among others.

62. Mr. Pagán's injury and eventual surgery occurred as a proximate result of the unsafe and unseaworthy condition of the vessel, which was owned and/or operated and/or maintained by Chesapeake and/or Schuyler. In addition, said injury and consequent surgery was caused in whole, as a proximate result of negligence on the part of the Defendants, their agents, servants and/or employees.

63. Since Mr. Pagán was not allowed to rest from surgery, and therefore had to exert a lot of force to operate the machinery on board the SLNC Goodwill, while trying to protect the surgery site, Mr. Pagán developed an inguinal hernia.

64. The inguinal hernia Mr. Pagán developed was a direct result of the unseaworthiness displayed by Chesapeake and/or Schuyler, by making Mr. Pagán work immediately after undergoing surgery and having to exert force, while protecting his surgery site.

### THIRD CAUSE OF ACTION – MAINTENANCE, CURE AND UNEARNED WAGES

65. The allegations contained all in previous paragraphs are realleged as if fully alleged herein.

66. There is a Collective bargaining agreement ("CBA") between SIU and defendants.

67. That CBA affects all SIU members.

68. Said CBA clearly states that Mr. Pagán's maintenance rate is $16 per day.

69. The CBA also states that "the payment due hereunder shall be paid to the man weekly".

70. Until today, defendants failed to send weekly payments to Mr. Pagán.

71. Defendants also failed to timely pay Mr. Pagán with the cure's expenses incurred by him.

72. Defendants must be penalized, a declaratory judgment must be entered as to Chesapeake and/or Schuyler to cease and desist from such conduct, and Mr. Pagán must be awarded with punitive damages.

## VI. RELIEF

WHEREFORE, plaintiff prays that this court enter judgment in favor of plaintiff and against defendants and award to plaintiff the following monetary amounts, totaling $2,100,000.00 to be paid by defendants, jointly and severally:

    a.    For Plaintiff's physical damages an amount in excess of $1,000,000.00;

    b.    For Plaintiff's emotional damages and pain and suffering, including damages done to his personal tranquility, enjoyment of life, dignity, among others, an amount which in excess of $750,000.00;

    c.    For loss of past and future income by Plaintiff, as well as economic losses, in an amount in excess of $250,000.00;

    d.    Punitive damages in an amount not less than $100,000.00;

    e.    Provide for the payment of all applicable interest, including prejudgment interest, together with reasonable attorney's fees, litigation expenses and the costs of this action; and

    f.    Such other and further relief as the Court may deem appropriate and proper, and retain jurisdiction over this action in order to ensure full compliance with any decree issued by this court.

Respectfully submitted,

LEWICKY, O'CONNOR, HUNT & MEISER, LLC

/s/ Steven J. Lewicky

---

Steven J. Lewicky, Esq.
slewicky@lohmlaw.com
Bar No. 07464
8115 Maple Lawn Blvd., Suite 175
Fulton, Maryland 20759
410-489-1996 (Telephone)
410-775-8680 (Facsimile)
Attorney for Plaintiff

## **JURY DEMAND**

As set forth in Paragraph 4, Plaintiff requests trial by jury on all causes so triable.

/s/ Steven J. Lewicky

---

Steven J. Lewicky, Esq.